UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN RICKERT,                          )
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )      Case No. 4:05CV1053 CDP
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the

Commissioner's final decision denying plaintiff John Rickert's application for

disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq.

Rickert claims that he is disabled due to back pain, seizure disorder and panic

attacks. The Administrative Law Judge, however, found that Rickert was not

disabled. Because I find that the decision denying benefits was supported by

substantial evidence, I will affirm the decision.

## Procedural History

On March 21, 2003, Rickert filed an application for a Period of Disability and

Disability Insurance Benefits pursuant to Title II of the Social Security Act. Rickert

alleged disability since May 2001[1] due to "black-outs, angry over stupidity due to medications, and panic attacks." The application was denied initially[2] on June 11, 2003. Rickert requested a hearing which was held on June 29, 2004. The ALJ determined that Rickert was not disabled in a decision issued November 10, 2004. The Appeals Council denied Rickert's request for review on May 25, 2005. Thus, the decision of the ALJ stands as the final determination of the Commissioner.

## Evidence Before the Administrative Law Judge

Rickert was 55 years old at the time of the ALJ hearing. He graduated from high school and did a few years of college and electronics trade school. He never received a degree. His work history is varied with both unskilled and semi-skilled jobs, including past relevant work as a security guard, warehouse keeper, supermarket janitor and bagger, fast-food restaurant worker, and beer bottler. The ALJ summarized Rickert's allegations as disability due to back pain, seizure disorder, and panic attacks.

---

[1] Rickert's application for disability insurance benefits filed in March 2003 stated the onset date as May 1, 2002. However, during his testimony at the ALJ hearing Rickert amended the onset date to May of 2001.

[2] Missouri is one of several test states participating in modifications of the disability determination procedures applicable to this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. See id. Therefore, plaintiff's appeal in this case proceeded directly from his initial denial to the ALJ level.

There is some confusion in the record as to when Rickert stopped working. In his application for benefits and on multiple forms Rickert lists employment as a watchman from May 2000 to May 2002. In his testimony at the ALJ hearing, however, he testified that he worked as a watchman from late May 1999 until May 2001. The ALJ asked for clarification and Rickert amended his onset date to May of 2001. It is unclear from the ALJ's report whether he interpreted this clarification in testimony as only changing Rickert's onset date or also changing the date on which he stopped working.[3] I understand Rickert's testimony to be that his onset date was the same as the date when he stopped working, May 2001. This distinction, however, is not material to my analysis of the case. Rickert testified that he had to stop working because he no longer had the patience to deal with children. He explained this anger and impatience as a side-effect of his prescription medications. Following his watchman job, he was unable to gain employment at the post office after failing a physical exam.

At the time of the ALJ hearing Rickert was living with his parents and brothers. He stated that he does not help with household chores but does help care for his aging father. Rickert does have a drivers license. He testified that he

___

[3] In the ALJ's decision he states both that Rickert "amended his onset date to May 2001 although the record indicates he continued to work through May 2002" and that Rickert "has not engaged in substantial gainful activity since May 1, 2001."

expected to give up his license because of the seizures.

Rickert's testified that he has had a seizure disorder since he was five years old and that his last seizure was in 2000 and led to a car accident.  However, he explained to the ALJ that he has another ongoing medical problem that is similar to seizures, where he loses focus and has to fight from passing out.  The frequency of these seizure-like episodes varies daily from none on some days, to four on other days.  Rickert can not predict when they will occur.  He stated that they can even occur while he is sleeping, which causes sleep-walking.  Depending on the strength of these episodes, Rickert occasionally falls down, stutters or stops talking.

Rickert takes Phenobarbital and Dilantin multiple times a day to control the seizures.  These medications have been successful in preventing him from passing out and from body shakes, however, he still has the seizure-like episodes where he loses the ability to concentrate.  Rickert also alleged tendonitis in his arm as a result of his 16-year employment as a beer bottler.

## Medical Records

According to Rickert's testimony, he has been treated by Dr. Patrick Hogan, a neurologist, for his alleged seizure disorder since 1984 or 1985.  According to Dr.

Hogan's treatment records, Rickert has had two electroencephalograms (EEG)[4], which occurred on October 31, 2000 and August 27, 2002. Both EEG test results were normal. Dr. Hogan prescribed Phenobarbital and Dilantin in August 2002 and again in February 2003 for Rickert's complaints of seizures.

Rickert has also been treated for back pain. In March 2003 he was seen by Dr. Kumar at Premier Care South. Rickert complained of bilateral shoulder pain, thoracic pain, and lumbar pain. Dr. Kumar assessed Rickert as having (1) bilateral shoulder pain most probably secondary to rotator cuff tendinitis and subacromial bursitis and (2) a history of thoracolumbar pain which may be myofascial in nature or related to mild degenerative disease. Dr. Kumar recommended a course of physical therapy and Vioxx, an anti-inflammatory medication. X-rays were done at Premier Care and read by a radiologist. An X-ray of his lumbar spine showed a transitional segment at L5 with sacralization on the right side and anterior spurring at L3, L4, and L5. An X-ray of his thoracic spine showed marginal spurring but was negative for malalignment or fracture. The right shoulder X-ray showed no

---

[4] An electroencephalogram (EEG) is a test that measures and records the electrical activity of the brain by using sensors (electrodes) attached to the patient's head and connected by wires to a computer. The computer records the brain's electrical activity on the screen or on paper as wavy lines. Certain conditions, such as seizures, can be detected by observing changes in the normal pattern of the brain's electrical activity. See http://www.webmd.com/hw/epilepsy/aa22249.asp.

definite abnormality and the left shoulder X-ray was read as probable degenerative changes in the left glenohumeral joint, a joint that was found to be asymmetric when compared with the right side.

Rickert also alleged panic attacks. Dr. Michael Armour, Ph. D., a licensed psychologist, performed a psychological evaluation of Rickert in May 2003. Dr. Armour diagnosed Rickert as having personality change due to seizure disorder and paranoia. Dr. Armour rated Rickert's ability to understand instructions as mildly impaired, his ability to recall instructions as moderately impaired, his ability to sustain concentration and persistence in tasks as moderately to at times severely impaired, and his ability to interact socially as moderately to at times severely impaired. Dr. Armour found Rickert to be of at least average intelligence and observed that he has a tendency to go off on tangents and not stay on the original topic. He also found Rickert to have a labile mood and paranoid thinking. During Dr. Armour's clinical interview, Rickert stated that he was having a seizure. During this time Dr. Armour described Rickert as appearing to be detached from the evaluation setting and preoccupied but that he did not lose consciousness or exhibit any shaking or jerking of his extremities.

A physical residual functional capacity assessment of Rickert was performed by a state agency consultant on June 9, 2003. The state consultant found that

Rickert should limit repetitive upper extremity pushing and pulling but that he can occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours of an 8-hour workday, and sit for 6 hours of an 8-hour workday. In terms of postural limitations, Rickert must frequently limit balancing, stooping, kneeling, crouching, and crawling. He should occasionally limit climbing. His overhead reaching is also limited. Rickert should avoid even moderate exposure to hazardous environmental limitations. Overall, the state consultant found Rickert's allegations of restrictions credible but she stated that he failed to allege symptoms attributable to his medically determinable impairment, except for actual seizures.

A psychiatric review was submitted by Dr. James Spence, Ph.D., the state agency psychologist. He found that Rickert's mental impairment was not severe. After summarizing many of the details of Dr. Armour's report, Dr. Spence noted that Dr. Armour only had a single session with Rickert and that his opinion should be "provided little weight as the claimant's activities of daily living support no more than a minimal restriction in function." According to Dr. Spence's report, Rickert cares for his own cleaning, laundry, shopping and maintains his hygiene on a daily basis. Rickert enjoys reading, watching television, and visiting with friends and family. Rickert goes out to dinner at larger restaurants and occasionally for fast food. He pays his own bills on a timely basis. As to Rickert's medically

determinable impairment of personality change due to seizure disorder and "paranoid 310.1," Dr. Spence found that disorder does not precisely satisfy the diagnostic criteria because Rickert is able to take care of daily living activities with minimal restriction. Dr. Spence found Rickert to have only mild limitations in the areas of restrictions on daily living activities, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace.

A residual functional capacity analysis was also performed by Rickert's treating neurologist, Dr. Hogan, in June of 2004. He diagnosed Rickert as having generalized seizure disorder that exhibits with seizures that last ten to twelve minutes and include loss of consciousness. In regards to the frequency of the seizures, Dr. Hogan said they occur every one to two years but listed the date of the last occurrence as October 2000, more than three years earlier. Rickert does not have warning when a seizure is about to occur and therefore he can not take safety precautions. Following a seizure Rickert has postictal manifestations of confusion that last up to twenty minutes. The seizures are precipitated by Rickert stopping his medications which he is "mostly" compliant about taking and which cause no side effects. Dr. Hogan reported "usually not much" interference in Rickert's daily activities as a result of a seizure and that Rickert's history does not include injury or incontinence from seizures. Rickert can operate a motor vehicle and take the bus

alone. However Dr. Hogan also said that the seizures are likely to disrupt the work of co-workers and that Rickert will need more supervision at work than an unimpaired worker. Rickert can not work at heights or with power machines that require an alert operator. Rickert is incapable of even a low stress job. He will need to take unscheduled breaks about every two hours during an eight-hour work day and he will miss approximately one day per month as a result of his disorder. Dr. Hogan lists no other limitations that would affect Rickert's ability to work at a regular job on a sustained basis.

No additional evidence was submitted upon appeal to the Social Security Administration Appeals Council.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or

because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the objective medical evidence; (2) the subjective
> evidence of the duration, frequency, and intensity of plaintiff's
> pain; (3) any precipitating or aggravating factors; (4) the
> claimant's daily activities; (5) the dosage, effectiveness and side
> effects of any medication; and (6) the claimant's functional
> restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is

entitled to substantial weight.  <u>Singh</u>, 222 F.3d at 451.  A treating physician's opinion concerning a claimant's impairment will be granted controlling weight, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. <u>Id.</u>  While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that an opinion "do[es] not automatically control, since the record must be evaluated as a whole."  <u>Prosch v. Apfel</u>, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "are supported by better or more thorough medical evidence" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. <u>Id.</u> (quoting <u>Rogers v. Chater</u>, 118 F.3d 600, 602 (8th Cir. 1997)).  In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion.  <u>Singh</u>, 222 F.3d at 452; <u>Prosch</u>, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## <u>The ALJ's Findings</u>

Based on his age, education, work experience, and residual functional capacity, the ALJ found that Rickert was not disabled.  He issued the following

findings:

1.  The claimant met the disability insured status requirements of the Act on May 1, 2001, the amended onset date, and continues to meet them through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since May 1, 2001.

3.  The medical evidence establishes the claimant has lumbar anterior spurring and L5 sacralization and epilespy, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's testimony was not credible to the extent discussed in the body of this decision.

5.  The claimant can perform sedentary work as long as he follows seizure precautions (20 CFR 404.1545).

6.  The claimant is unable to perform his past relevant work.

7.  The claimant is 55 years old, which is defined as advanced age (20 CFR 404.1563).

8.  The claimant has a high school education and a year of college (20 CFR 404.1564).

9.  The claimant has transferable work skills that can be applied to meet the functions of other work (20 CFR 404.1568).

10. Based on an exertional capacity for a wide range of sedentary work, the claimant's age, education and work experience, Section 404.1569 and Rule 201.07, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 provide a framework for finding the claimant not disabled.

11. The claimant's capacity for sedentary work has not been significantly

compromised by his nonexertional limitations. Accordingly, using the above-cited rule as a framework for decision-making, the claimant is not disabled.

13.[5]  The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520 (f)).

The ALJ found that Rickert's testimony was not credible to the extent he alleged an inability to perform any work. According to the ALJ, Rickert's testimony regarding seizures was inconsistent and completely lacking in evidentiary support in the record. Significantly, the EEG tests revealed no indication of a seizure disorder. Also, the ALJ found Rickert's daily activities to be inconsistent with an inability to work.

Although the ALJ concluded that Rickert has epilepsy and mild back pain secondary to a transitional segment at L5 with sacralization on the right and anterior spurring at L3, L4, and L5, he concluded that Rickert did not have any other severe impairment or combination of impairments that would prevent him from performing sedentary work. The ALJ noted that there are a number of jobs at the sedentary level of exertional activity that a person following seizure precautions can perform. As to panic attacks, the ALJ found that Rickert had never been diagnosed with such

---

[5] This misnumbering of the ALJ's findings occurred in his original decision; no finding numbered '12' exists.

attacks nor had he been treated for them. The ALJ considered the psychiatric review submitted by Dr. Spence, the state agency psychologist, to refute the conclusions of Dr. Armour and to be consistent with the weight of the medical evidence.

## Discussion

On appeal, Rickert alleges that the ALJ's conclusions on residual functional capacity are erroneous because he failed to properly evaluate the medical evidence of record, failed to consider all the medically determinable impairments and failed to point to medical evidence to support his conclusions that Rickert was capable of sedentary work. In addition Rickert argues that the ALJ's decision failed to properly consider Rickert's subjective complaints. Lastly, Rickert contends that the ALJ's conclusions are not supported by substantial evidence and lack the necessary support of vocational expert testimony. In response, the Commissioner maintains that the ALJ properly assessed Rickert's credibility, properly evaluated Rickert's residual functional capacity, and properly determined that Rickert can perform other work in the national economy.

I find that substantial evidence supports the ALJ's decision, upon which he arrived following a proper legal analysis. The ALJ determined that Rickert's allegations of disability were not credible. In so doing, he noted that the medical

evidence and Rickert's daily activities did not support his claim of disability.

Rickert argues that the denial of benefits is erroneous because the ALJ failed to consider Rickert's residual functional capacity under the standards contained in Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000), and Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Residual functional capacity "is the most [a person] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination turns on "all of the relevant medical and other evidence," including statements from the claimant. Id. This evidence includes: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; (6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Polaski, 739 F.2d at 1321-22; 20 C.F.R. §§ 404.1529, 416.929.

The ALJ adequately considered the entire record in his determination that Rickert had the residual functional capacity to perform sedentary work as long as he

follows seizure precautions.  Although Rickert has been treated with anti-seizure medications, there is no objective medical evidence in the record to indicate that Rickert actually has a seizure disorder.  The two EEG tests performed by Rickert's treating neurologist showed no sign of seizure disorder.  Despite this lack of objective evidence, the ALJ concluded that Rickert had epilepsy, but found it was not disabling.  Rickert's testimony about his other "seizure-like" problems, where he became disoriented and lost concentration, are not supported at all by any medical evidence.  He told Dr. Armour that he was experiencing a seizure during his psychological evaluation, but Dr. Armour saw no evidence such as loss of consciousness or shaking or jerking of extremities.  Dr. Hogan's records and reports make no reference at all to any small seizures or other "seizure-like" problems.  Dr. Hogan reported that Rickert had only one to two seizures per year (with the last being three years before the hearing), but he indicated those seizures were precipitated by Rickert's discontinuing his medications.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995)(quoting Stout v.Shalala, 988 F.2d 853, 855 (8th Cir. 1993)).  The ALJ also correctly noted that although Rickert alleged falling down from seizures, there was no medical evidence to show that he had ever suffered any injuries from falls.  Overall, the ALJ had good reason to discredit

Rickert's claim that his seizure disorder was disabling.

The ALJ pointed out that the most significant objective finding was the lumbar x-ray that revealed a transitional segment at L5 with sacralization on the right, anterior spurring from L3 through L5 and marginal spurring in the thoracic spine but no malalignment or fracture. However, given this medical evidence, the ALJ found that Rickert's daily activities are inconsistent with an inability to perform any work because of disabling pain.

A treating physician's opinion concerning a claimant's impairment will be granted controlling weight, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Singh, 222 F.3d at 451. The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "are supported by better or more thorough medical evidence" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. Prosch v. Apfel, 201 F.3d at 1013 (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).

The ALJ adequately considered the records of Rickert's treating neurologist, Dr. Hogan. Significantly, no physician, not even Dr. Hogan, offered an opinion that Rickert was disabled. Just as a treating physician's opinion must, in general, be

given "substantial" weight in determining a claimant's disability status, <u>Burress v. Apfel</u>, 141 F.3d 875, 880 (8th Cir. 1998), the absence of such a document in the record, as here, tends to weigh against a finding favorable to the claimant. Dr. Hogan's assessment of Rickert's residual functional capacity stated that Rickert's seizures would usually not interfere with his daily activities. Dr. Hogan said Rickert could not work at heights or with power machines, but he listed no other physical or positional limitations to Rickert's ability to work on a sustained basis.

As for the alleged panic attacks, there is no evidence in the record to indicate that Rickert has ever had a panic attack or that he has ever received treatment for this condition. Rickert argues that the ALJ improperly discounted Dr. Armour's findings, but Dr. Armour did not find that Rickert suffered from any panic disorder. His finding was simply that Rickert had personality changes due to his seizure disorder and that he had some impairment in recall and concentration. Overall, the ALJ considered all the medical evidence including Dr. Armour's findings, but the ALJ found that "Dr. Armour's initial assessment in which he found mild or moderate impairment in the claimant's ability to sustain concentration and persistence, understand and recall instructions and interact socially was refuted by the assessment of Dr. Spence who found it too restrictive in light of the minimal medical evidence." Furthermore, the ALJ clearly concluded that Dr. Spence's

evaluation of all the records was "consistent with the medical evidence." In this case, that would entail consistency with the medical evidence indicating a lack of any seizure disorder, as found in the EEG tests. In addition, the ALJ noted that Dr. Armour "refuted his more restrictive initial assessment in his final conclusory paragraph in which he concluded the claimant could understand and remember instructions, sustain concentration and persistence, interact socially and adapt to the environment." Even Dr. Armour's conclusions of impairment in social functioning and difficulty concentrating does not show that Rickert is disabled. Dr. Armour did not opine that the impairments he found would be inconsistent with working.

Thus, since the substantial evidence of the record supports the finding that Rickert has the residual functional capacity to perform sedentary work with seizure precautions, the ALJ's decision will stand. The ALJ evaluated the results of all of Rickert's physicians before coming to a determination that Rickert was not disabled, including Dr. Hogan's and Dr. Armour's findings. I conclude that the ALJ adequately considered all evaluations and based on that evidence found that it did not support a claim for disability.

Next, Rickert alleges that the ALJ failed to properly consider his subjective complaints. I find that the ALJ properly evaluated Rickert's testimony under the standards set forth in <u>Polaski</u>, 739 F.2d 1320.

Although the ALJ may discount a claimant's subjective complaints, he may not do so on the sole ground that those complaints are not fully supported by the objective medical evidence.  <u>Jeffrey v. Secretary of Health & Human Servs.</u>, 849 F.2d 1129, 1132 (8th Cir. 1988).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  <u>Bladck v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998); <u>Spradling v. Chater</u>, 126 F.3d 1072, 1075 (8th Cir. 1997); <u>Battles</u>, 902 F.2d at 660.  Thus, in assessing subjective allegations, the ALJ may consider the frequency and type of the claimant's medication or treatment, the claimant's daily activities, and the claimant's appearance and demeanor at the hearing.  <u>Jones v. Chater</u>, 86 F.3d 823, 826 (8th Cir. 1996); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 (8th Cir. 1989).

When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination using the factors set forth in <u>Polaski</u>.  <u>Baker v. Apfel</u>, 159 F.3d 1140, 1144 (8th Cir. 1998); <u>Cline v. Sullivan</u>, 939 F.2d 560, 565 (8th Cir. 1991).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered the relevant evidence.  <u>Jeffrey</u>, 849 F.2d at 1132; <u>Butler v. Secretary of Health & Human Servs.</u>, 850 F.2d 425, 429 (8th Cir. 1988).

I find that the ALJ provided several sufficient reasons for discrediting

Rickert's testimony.  Rickert's claims of disabling symptoms conflicted with the medical evidence and his daily activities.  One reason the ALJ discredited Rickert's testimony was because it is completely unsupported by any objective medical evidence.  The EEG tests indicate no seizure activity and there is no medical evidence showing injuries resulting from seizures.  Rickert's testimony at the hearing was inconsistent when he described not suffering any seizures since 2000 and then describing seizure-like activity that occurred a few days before the hearing.  Nothing in the medical record supports the claim of any impairment because of these more limited seizure-like episodes.  Additionally, Rickert testified to having seizures since the age of five, yet his work history showed employment until 2001.  There is certainly no evidence in the file that his seizures have increased in number or in severity.  Indeed, the medical evidence shows that they have reduced, since Rickert had not had a seizure for three years.  If a claimant has worked with an impairment for a period of years, it cannot be considered presently disabling unless there has been some change for the worse.  See, e.g., Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992).

Lack of objective medical evidence was not the ALJ's only reason for denying the claim.  He considered the observations of third parties, including Dr. Armour, who indicated that Rickert claimed to have suffered a seizure during an

evaluation, but he did not lose consciousness, jerk or tremble.  The ALJ also considered Rickert's daily activities and found an inability to work to be inconsistent with those activities, which included: caring for his own personal hygiene, performing household chores, having a drivers license, socializing with friends and family, going out to restaurants, and paying his own bills on a timely basis.

Rickert argues that the daily activities listed by the ALJ are insufficient to discredit his testimony.  He cites cases which hold that a finding of the ability to perform certain daily activities is insufficient to discredit claimant's testimony, specifically as to pain.  There is no evidence in the record to indicate that Rickert is in such pain as to prevent work.  He did not testify on the subject of pain at the ALJ hearing.  The only objective indication of pain could be the x-ray results from Premier Care South, but there is no indication that Rickert suffers disabling pain as a result of those conditions.  To the contrary, Dr. Kumar wrote in his medical notes that if Rickert's symptoms persist he could receive a cortisone injection around his shoulders or myofascial trigger points.  There are no medical records indicating that Rickert ever went back for such treatment.  Overall, there is no evidence in the record to indicate that Rickert has any condition at all that would prevent work-related physical activities when seizure precautions are taken.

As to panic attacks, Rickert never testified about this condition and there is no indication in the medical records of any treatment for such a condition. If a claimant has sought only minimal treatment for his allegedly disabling condition, this is an appropriate basis to discount his subjective complaints. Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir.1994).

While the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence, the ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990); Outsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989). This is what the ALJ did in the present case. Credibility determinations, when adequately explained and supported, are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for discrediting Rickert's claim, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir 2001).

Finally, Rickert argues that the ALJ's decision is erroneous because evidence in the record supports a finding of significant non-exertional impairments and the ALJ did not obtain testimony from a vocational expert to support his findings at Step 5 of the sequential evaluation process. A claimant is entitled to have a

vocational expert testify, unless "the ALJ properly discredits the claimant's complaint of a nonexertional impairment." <u>Reynold v. Chater</u>, 82 F.3d 254, 258-59 (8th Cir. 1996). As previously discussed, the ALJ properly discredited Rickert's testimony, finding that the medical records and Rickert's daily activities do not support his claims of disabling seizure disorder, panic attacks or back pain. No significant nonexertional limitations were found to exist and therefore the ALJ was not required to hear the testimony of a medical-vocational expert.

Considering the factors set forth in <u>Polaski</u>, 739 F.2d at 1330, <u>see</u> <u>supra</u>, I find that the ALJ's determination of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of <u>September</u>, 2006.